UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL HOOSTEIN & <br> KATHLYN STEIN, <br><br> Plaintiffs, <br><br> v. <br><br> MENTAL HEALTH ASSOCIATION <br> ("MHA"), INC., JEROME RAY, CITY OF <br> NORTHAMPTON, MARGARET KELLER <br><br> Defendants. | Civil Action No. 14-30139-MGM |

MEMORANDUM AND ORDER REGARDING DEFENDANTS' MOTIONS TO DISMISS
(Dkt. Nos. 12, 25)

April 13, 2015

MASTROIANNI, U.S.D.J.

I. INTRODUCTION

Michael Hoostein and Kathlyn Stein ("Plaintiffs"), proceeding pro se, filed a three-count complaint alleging Mental Health Association Inc. ("MHA"), Jerome Ray, the City of Northampton, and Margaret Keller ("Defendants") discriminated and retaliated against them in violation of the Fair Housing Act ("FHA") (Count I), engaged in unfair or deceptive acts and violations of the implied covenant of good faith and fair dealings in violation of MASS. GEN. LAWS § 93A (Count II), and breached their lease by nonpayment of rent (Count III). (Dkt. No. 1, Complaint ("Compl.").) Defendants have filed two separate motions to dismiss (Dkt. Nos. 12 and 25), asserting Plaintiffs have failed to state claims upon which relief can be granted.[1]

---

[1] The court also makes note of two other pending motions, whose outcomes are affected by the court's ruling on the motions to dismiss: (1) Dkt. No. 22, "Motion for More Definite Statements by Defendants, Mental Health Association, Inc., and Jerome Ray as to Defendants' 'Notice of Filing,' 'Motion to Amend Answer' and 'Amended Answer,'" filed by Plaintiffs on December 15, 2014; and (2) Dkt. No. 33, "Motion to Correct Minor Clerical Errors in the Plaintiff's Affidavit and Statement of Facts re 32 Statement of facts, 31 Memorandum in Opposition to Motion," filed by Plaintiffs on February 17, 2015.

For the reasons set forth below, the court grants Defendants' motions to dismiss with respect to Plaintiffs' FHA claims. Additionally, the court declines to exercise supplemental jurisdiction over Plaintiffs' remaining claims, which arise under Massachusetts law. As a result, the court dismisses those claims as well.

**II.     STANDARD**

To survive a 12(b)(6) motion to dismiss, a complaint must allege facts that "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Thus, the factual allegations in the complaint must "nudge[] [the] claims across the line from conceivable to plausible." Id. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Determining whether a complaint states a plausible claim for relief" is a context-specific task, requiring "the reviewing court to draw on its judicial experience and common sense." Id. at 679.

Courts are not required to accept as true allegations in a complaint that are legal conclusions. Id. at 678. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679. Therefore, in assessing a claim's plausibility, the court must construe the complaint in the plaintiff's favor, accept all non-conclusory factual allegations as true, and draw any reasonable inferences in favor of the plaintiff.[2] See San Gerónimo Caribe Project, Inc. v. Acevedo-Vilá, 687 F.3d 465, 471 (1st Cir. 2012).

**III.     PLAINTIFFS' FACTUAL ALLEGATIONS PERTINENT TO THE COURT'S RULING**

---

[2] The court additionally notes the liberal construction typically accorded to complaints brought by pro se plaintiffs. Stern v. Haddad Dealerships of the Berkshires, Inc., 477 F. Supp. 2d 318, 321 (D. Mass. 2006) ("[A] pro se plaintiff is entitled to liberal construction of his allegations, no matter how inartfully pled.").

2

Plaintiffs are the father and step-mother of Davina Hoostein ("Ms. Hoostein"), a handicapped client of Defendant MHA. (Compl. ¶ 13.) Ms. Hoostein has been receiving "Shelter Plus Care" since February of 2008.[3] (Id.) On February 7, 2012, while living in a Shelter Plus Care-subsidized apartment, Ms. Hoostein disclosed that she was pregnant. (Compl. ¶ 23.) As a result, MHA attempted to revoke Ms. Hoostein's Shelter Plus Care subsidy, as she would no longer be a single individual—a prerequisite for this subsidy. (Id.) Ms. Hoostein then filed a complaint with HUD, alleging discrimination and retaliation. (Compl. ¶ 24.)

MHA agreed to settle the dispute and provided an accommodation for the [then] pregnant Ms. Hoostein in June of 2012 at Plaintiffs' "two-family" apartment, located at 481 Montague Road in Shutesbury, Massachusetts. (Compl. ¶¶ 11, 25; Dkt. No. 1, Exh. 3 ¶ 1). Plaintiffs and MHA entered into a lease agreement for a one-year term beginning July 1, 2012 through June 30, 2013. (Compl. ¶¶ 26-27.) The lease named Ms. Hoostein and her soon-to-be newborn child as the sole occupants.[4] (Id.) In August of 2012, Ms. Hoostein gave birth to a baby boy and brought him home to live with her in the apartment. (Compl. ¶ 27.)

On March 19, 2013, MHA informed Plaintiffs it would be vacating the apartment by June 30, 2013.[5] (Dkt. No. 1, Exh. 9.) In a separate notice with the same date, MHA explained to Ms. Hoostein that, because she had a "change in family size," she was no longer considered a single individual and thus was not eligible for a Shelter Care Plus subsidy beginning June 30, 2013. (Dkt. No. 1, Exh. 10 ¶ 1.) MHA further explained to Ms. Hoostein, however, that she was eligible for a

---

[3] Authorized by the McKinney Homeless Assistance Act, 42 U.S.C. § 11403-11407(b), "Shelter Plus Care" provides mental health and housing subsidies through the U.S. Department of Housing and Urban Development (HUD). As defined by 24 C.F.R. § 582, "Shelter Plus Care" is "designed to link rent assistance to supportive services for hard-to-serve homeless persons with disabilities…and their families." 24 C.F.R. § 582.1(a). However, Defendant City of Northampton has declared that its local program is developed to serve mentally ill homeless individuals and house "single adults in one bedroom units." (Compl. ¶ 49; Dkt. No. 1, Exh. 13 ¶¶ 3-4).

[4] The court notes this was the third "Tenant-based Rental Assistance" housing subsidy lease which MHA had entered into on Ms. Hoostein's behalf, since Feburary of 2008. (Compl. ¶ 15).

[5] Plaintiffs do not contest the timeliness of this notification relative to MHA's stated departure date.

3

different type of subsidy based on her new status as a family household, beginning July 1, 2013.[6] (Dkt. No. 1, Exh. 10 ¶ 1; Exh. 13 ¶ 3.) Insisting that MHA was obligated to abide by the terms of the existing lease until Ms. Hoostein voluntarily vacated the apartment, Plaintiffs refused to allow MHA to terminate its lease. (Compl. ¶ 42.)

On April 1, 2013, Plaintiff Michael Hoostein ("Mr. Hoostein") filed a Fair Housing Act complaint of discrimination with HUD against the Massachusetts Department of Mental Health ("DMH") and MHA, on his daughter's behalf.[7] (Dkt. No. 1, Exh. 3 ¶ 14). He alleged Ms. Hoostein's Shelter Plus Care subsidy had been cancelled in retaliation for Plaintiffs' FHA-related activities. Before a decision from HUD had been released, MHA ceased paying rent to Plaintiffs on June 30, 2013. (Dkt. No. 17.) On August 22, 2013, HUD found that MHA was not in violation of section 504 of the Rehabilitation Act of 1973 regarding the allegations in the complaint. (Dkt. No. 1, Exh. 3 ¶ 14.)

Mr. Hoostein subsequently filed a request for a temporary restraining order alleging MHA's non-payment of rent and breach of lease contract as grounds therefor. (Compl. ¶ 55.) On August 30, 2013, a breach-of-lease trial was held on in the Western Division Housing Court to address Mr. Hoostein's request for a temporary restraining order, and the court found for MHA. (Compl. ¶ 55; Dkt. No. 1, Exh. 3 ¶ 21.) Plaintiffs then filed this complaint in federal district court on July 31, 2014. Defendants filed motions to dismiss for Plaintiff's alleged failure to state a claim on September 15,

---

[6] Ms. Hootstein was to be transitioned from the Shelter Plus Care subsidy to a Department of Mental Health (DMH) subsidy, which is a Mobile Rental Voucher provided through the Massachusetts Department of Housing and Community Development ("DHCD"), as opposed to its federal counterpart, HUD, by way of the MHA. The Mobile Rental Voucher would provide the same affordable housing subsidy and provision of supportive disability services to Ms. Hoostein, but would also accommodate her son. (Dkt. No. 1, Exh. 3 ¶ 12.)

[7] Ms. Hoostein and her father also filed complaints with the Massachusetts Commission Against Discrimination ("MCAD") against MHA. (Dkt. No. 1, Exh. 3 ¶¶ 14-15.) On April 1, 2013, Plaintiff Michael Hoostein filed an "Associated Disability/Retaliation" complaint. (Compl. ¶ 50.) On May 13, 2013, Ms. Hootein filed a "Sex (mother plus child) Familial Status Discrimination" complaint. (Compl. ¶ 43.) The MCAD denied both claims. (Compl. ¶¶ 51, 54; Dkt. No. 1, Exh. 3 ¶¶ 14-16.)

2014 (Dkt. No. 12) and January 15, 2015 (Dkt. No. 25), which Plaintiffs opposed on November 19, 2014 (Dkt. No. 17) and February 11, 2015 (Dkt. No. 31).[8]

## IV. ANALYSIS

### A. Fair Housing Act Claims

Plaintiffs allege Defendants violated several sections and subsections of the FHA, specifically: 42 U.S.C. §§ 3604(a-c), 3604(f)(1)(c), and 3617.[9] (Compl. ¶ 68 (a-d)). Even read in the light most favorable to the Plaintiffs, see San Gerónimo Caribe Project, Inc., 687 F.3d at 471, their factual allegations do not give rise to a cause of action against any of the Defendants under the named provisions of the FHA.

42 U.S.C. § 3602 defines the phrase, "to rent," for the purposes of the FHA as: "to lease, to sublease, to let and otherwise to grant for a consideration the right to occupy premises not owned by the occupant." 42 U.S.C. § 3604(a) therefore makes it unlawful for a potential landlord or property owner to refuse to rent or sell a dwelling to persons of a named set of protected classes. See 42 U.S.C. § 3604(a) (It shall be unlawful "[t]o refuse to sell or rent after the making of a bona fide offer,

---

[8] Plaintiffs also filed a "Supplemental Brief in Opposition to Defendant's Combined Motions to Dismiss and/or Summary Judgment on Count II," along with a series of exhibits, on March 27, 2015. (Dkt. No. 39.) Additionally, both parties submitted various other exhibits in support of their respective motions and oppositions. (See, e.g., Dkt. No. 28.) "Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001). "However, courts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). Ultimately finding that Plaintiffs have failed to state a claim upon which relief can be granted, the court does not accept the Plaintiffs' invitation to convert the instant motion into a motion for summary judgment. See generally Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). Therefore, to the extent these exhibits do not fall into one of these narrow exceptions, they are excluded from consideration at this stage. See generally Alternative Energy, Inc., 267 F.3d at 33. Finally, to the extent the exhibits submitted by the parties fall into one of the exceptions mentioned above, see Watterson, 987 F.2d at 3, the court finds they would not affect its ruling on Defendants' 12(b)(6) motions.

[9] Plaintiffs assert they are "'aggrieved persons' within the meaning of 42 U.S.C. Fair Housing Act § 3602(i) because they have suffered, and continue to suffer, an array of financial and emotional injuries as a result of [D]efendants' discriminatory and illegal conduct stated above." (Compl. ¶ 69.)

5

or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin."). Similarly, 42 U.S.C. § 3604(b) prohibits potential landlords and property owners from discriminating against persons by virtue of those persons' inclusion in a set of protected classes. See 42 U.S.C. § 3604(b) (It shall be unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin."). Additionally, in the context of selling or leasing property, 42 U.S.C. § 3604(f)(1)(c) makes it unlawful for a potential landlord or property owner to discriminate against an individual, or anyone associated with an individual, with a handicap. See 42 U.S.C. § 3604(f)(1)(c) (It shall be unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of…any person associated with that buyer or renter.").

Finally, by its text, a plaintiff's ability to raise a claim under 42 U.S.C. § 3617 invariably requires, as a prerequisite, that the plaintiff attempt or manifest a desire to either exercise his or her rights or to help another exercise his or her rights under 42 U.S.C. § 3603, 3604, 3605, or 3606.[10] See 42 U.S.C. § 3617 ("It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 803, 804, 805, or 806."). Therefore, if a plaintiff is unable to state facts demonstrating he or she has attempted or manifested a desire to exercise a right (or to help another exercise a right) under any of the aforementioned sections, it follows that the plaintiff's 42 U.S.C. § 3617 claim must be dismissed as well.

---

[10] But see generally Stackhouse v. DeSitter, 620 F. Supp. 208 (N.D. Ill. 1985) (suggesting 42 U.S.C. § 3617 may be violated absent an actual violation of sections 3603-3606).

Based solely on the facts alleged by Plaintiff, no Defendants qualify as individuals whose actions are controlled by the provisions of the named sections of the FHA, as Defendants are not landlords or potential home-sellers of 481 Montague Road. In fact, Plaintiffs explicitly state in their complaint that Plaintiffs, in fact, "own the 'two family' apartment [in question] jointly and severally."[11] (Compl. ¶ 11). Plaintiffs therefore constitute the only potential landlords of, or, alternatively, the only individuals with the ability to sell, the property at 481 Montague Road. Consequently, Plaintiffs lack a cause of action under the named provisions of the FHA against their tenants, individuals or entities associated with their tenants, and any other individuals or entities who do not actually own the property at 481 Montague Road.

In essence, Plaintiffs attempt to use the anti-discrimination provisions of the FHA to compel Defendants to provide Ms. Hoostein with a voucher to continue to rent Plaintiffs' apartment following the birth of Ms. Hoostein's son. While the court is sympathetic to Ms. Hoostein's predicament, the named provisions of the FHA are not the appropriate vehicle for the relief Plaintiffs seek on her behalf. By the text of the named provisions of the FHA, under which Plaintiffs bring their claim, the statute is not designed to provide landlords with a cause of action against their tenants.

**B. Remaining Claims**

In addition to their Fair Housing Act claims, Plaintiffs assert an "[u]nfair or [d]eceptive acts & [v]iolations of the [i]mplied [c]ovenant of [g]ood [f]aith and [f]air [d]ealings" claim under MASS. GEN. LAWS ch. 93A (Compl. ¶¶ 71-72),[12] as well as a "breach of lease non-payment of rent" claim.[13]

---

[11] Plaintiffs also state that one Defendant, MHA, is actually their tenant. (Compl. ¶ 1; see also Compl. ¶ 11 (stating that the property is, in fact, "leased to defendant…MHA.").)

[12] The court notes that, in their memorandum of law in opposition to Defendants' motion to dismiss, Plaintiffs expressed their desire to "withdraw their Count II Unfair or Deceptive Acts claim against City defendants." (Dkt. No. 17, Plaintiffs' Memorandum in Opposition to Motions to Dismiss 1.)

[13] To the extent that either of Plaintiffs' state-law claims constitute an appeal of their Housing Court Judgment (Dkt. No. 17, Plaintiffs' Memorandum in Opposition to Motions to Dismiss 9 ("plaintiffs appealed Housing Court's erroneous ruling in both the Massachusetts Appeals Court...and in this court")), the court notes the Rooker-Feldman doctrine

(Compl. ¶¶ 73-75.) In their complaint, Plaintiffs assert that this court has jurisdiction over all three counts alleged. (Compl. ¶ 7.) Specifically, Plaintiffs contend their FHA claims give rise to this court's jurisdiction over a federal question pursuant to 28 U.S.C. § 1331, and they contend the court has jurisdiction over the remaining claims pursuant to the doctrine of supplemental jurisdiction. (Compl. ¶ 7.) See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); Xuncax v. Gramajo, 886 F. Supp. 162, 194 (D. Mass. 1995) ("[W]hen a federal district court has original subject matter jurisdiction over certain claims in an action, the court: 'shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.'" (quoting 28 U.S.C. § 1367(a) (Supp. May 1992)).

"[A] district court has discretion to decline to exercise supplemental jurisdiction after dismissing 'all claims over which it ha[d] original jurisdiction.'" Figueroa v. Alejandro, 597 F.3d 423, 431 n.10 (1st Cir. 2010) (quoting 28 U.S.C. § 1367(c)(3)). Accordingly, since the court has dismissed Plaintiffs' FHA claims, this court, in its discretion, declines to exercise its supplemental jurisdiction over the remaining state law claims.[14] See Meuse v. Pane, 322 F. Supp. 2d 36, 39 (D. Mass. 2004) ("Having dismissed Meuse's federal claims against Fox, this Court declines to exercise supplemental jurisdiction over his state law claims against Fox."); see also United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a

---

prevents federal district courts from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Lance v. Dennis, 546 U.S. 459, 464 (2006) (internal quotation marks and corresponding citation omitted).

[14] In the "Jurisdiction and Venue" section of their complaint, Plaintiffs additionally assert that federal jurisdiction is also conferred through the non-discrimination requirements of "24 C.F.R. Part 582 Shelter Plus Care, 242 C.F.R. Part 5." Without passing judgment as to whether Plaintiffs might be able to assert a colorable claim under these regulations (thereby potentially conferring federal jurisdiction), the court observes that Plaintiffs have not directly put forth a claim in this complaint based upon Defendants' alleged violation of these regulations. The existence of these regulations, therefore, does not affect the court's ruling given the claims alleged in the complaint.

8

matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").

The remaining claims are therefore dismissed without prejudice as well.

V. CONCLUSION

For the reasons set forth above, Plaintiffs' Fair Housing Act claims (Count I) are dismissed with prejudice, due to their failure to state a claim upon which relief can be granted. The court exercises its discretion to dismiss, without prejudice, Plaintiffs' remaining state-law claims (Counts II and III) as well. Accordingly, Defendants' motions for dismissal (Dkt. Nos. 12, 25) are GRANTED. In light of this ruling, the remaining pending motions before this court (Dkt. Nos. 33 and 22) are denied because they have been rendered moot.

The case may now be closed. The clerk should enter judgment for Defendants.

It is So Ordered.

      /s/ Mark G. Mastroianni
      MARK G. MASTROIANNI
      United States District Judge